HENRY RULISON *et al.*

*v.*

FRANCES S. POST.

1. PUBLIC SCHOOLS—*power of directors as to prescribing branches of study.* Under the School Law of 1865, the school directors have power to compel the teaching of other and higher branches than enumerated in the law, to those who are willing to receive instruction therein; but it is purely optional with parents and guardians whether the children under their charge shall study such branches.

2. It is the duty of the directors to provide the necessary schools to accommodate all children of the district, of proper age, to employ teachers, and to perform all other duties necessary to carry out the object of affording to all the children an opportunity to acquire, free of charge, a knowledge of the branches of study enumerated in the law; and the children can not be deprived of the benefit of such instruction because their parents do not choose to permit them to study higher branches not enumerated in the law, although not prohibited by it.

3. SCHOOL DIRECTORS—*rules and regulations adopted must be reasonable, and calculated to promote the object of the law.* In performance of their duties, school directors may prescribe proper rules and regulations for the government of the schools; they may classify scholars, regulate their studies and deportment, the hours to be taught, besides the performance of other duties necessary to the success and well-being of the schools. But all such rules and regulations must be reasonable and calculated to promote the object of the law—the conferring upon all, free of charge, such an education as they are by the law entitled to receive.

4. The law having conferred upon each child the right to be taught the branches enumerated therein, any rule or regulation which, by its enforcement, would tend to hinder or deprive the child of this right can not be sustained.

5. SAME—*suspending and expelling scholars.* The school directors have no power to expel a scholar for any reason except disobedient, refractory or incorrigibly bad conduct, and only for these after all other means have failed.

6. A girl, sixteen years of age, who was entitled to the benefit of a public school, and who was a pupil therein, belonged to a class which, by the course of study prescribed by the directors, was required to study book-keeping. Under and by the direction of her parents, she declined to do so, and for that reason only she was, by the teacher, under the orders of the directors, forcibly expelled from school, and ejected from the school building: *Held,* that the directors and the teacher were all liable in an action of trespass, the directors having no power to prescribe such a rule, and consequently no right to authorize the teacher to enforce it; *held, also,* that in such a case, $130 was not excessive damages.

APPEAL from the Circuit Court of Winnebago county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. WILLIAM LATHROP, for the appellants.

Mr. D. P. JONES, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that on the 25th day of April, 1871, appellee was a pupil in the common school in district No. 1, in township 28 north, of range 10 east, in Winnebago county; that she resided with her parents in the district, and was entitled to the benefits and privileges of the school; but on that day

she was expelled from the school and its privileges.    The expulsion was by the use of force employed by the principal teacher, under the direction of the directors of the school district.

By the course of study prescribed by the directors, appellee was in the class that was required to study book-keeping, as a part of the prescribed course of education in the school. She had been, by the principal of the school, directed to procure books for the purpose, but declined, as she says and the jury have found, because her parents objected to her pursuing that study.   She and her parents were notified, that unless she complied with the requirement she would be expelled from the privileges of the school.   On the morning of the day the expulsion occurred, having failed to obtain the books, and having as usual gone to the school house, without them, she was notified that her rights there as a pupil had ceased, and she was requested to leave, but declining, the principal took hold of her and led or pushed her out of the building. Having returned to the room, and the seat she was accustomed to occupy, she was taken therefrom and ejected in the same manner from the building.   The principal, on both occasions, pulled or pushed her from the room, through the door, down the first flight of stairs and out of the door to a landing, outside of the building.   No bodily injury is claimed to have been inflicted.   She was sixteen years of age, and her parents claim, and she testified, that her health was not good at the time of this occurrence, and that she was receiving lessons in music, on the piano, outside of the school, with a view of becoming a teacher of music.   She was expelled from the school house in the presence of other pupils and scholars. She did not again return to the school, nor does it appear that she would have been permitted to do so had she desired.

She instituted an action of trespass against the directors and the principal of the school, and, on a trial in the court below, the jury found a verdict in her favor, and assessed the damages at $130.   A motion for a new trial was entered by

defendants, but it was overruled by the court, and a judgment was rendered on the verdict, and they appeal.

The 18th section of the School Law of 1865 (Sess. Laws, p. 119), under which these directors derived their powers and were then acting, provides that the school directors "may direct what branches of study shall be taught, and what text books shall be used in their respective schools, and may suspend or expel pupils for disobedient, refractory or incorrigibly bad conduct." The next section provides that no teacher shall be authorized to teach a school under that act who is not qualified to teach orthography, reading in English, penmanship, arithmetic, English grammar, modern geography and the history of the United States; and the same section requires that such teacher shall be examined by the county superintendent of schools, and if found to be qualified shall be given a certificate of that fact. The same section contains this proviso: "That nothing herein contained shall prevent the teaching in the common schools of other and higher branches than those enumerated in this section."

From these enactments it is manifest that it was the design of the law makers that all of the children of the State should be afforded an opportunity to acquire, free of charge, a knowledge of the enumerated branches required to be taught. All concede the importance as well as the necessity for every person acquiring at least that amount of education, when they have the capacity to receive it. It is to that extent demanded for the well being of society, and the General Assembly have provided ample means for the purpose. The directors, under the statute, are required, in their several districts, to provide the necessary schools to accommodate all children of the district, of proper age, and to employ suitable teachers, levy taxes to support the schools, and perform other necessary duties in carrying out this great purpose of the State in giving that amount of education to its children.

In the performance of their duty in carrying the law into effect, the directors may prescribe proper rules and regula-

tions for the government of the schools of their district, and enforce them.    They may, no doubt, classify the scholars, regulate their studies and their deportment, the hours to be taught, besides the performance of other duties necessary to promote the success and secure the well-being of such schools. But all such rules and regulations must be reasonable, and calculated to promote the objects of the law—the conferring of such an education upon all, free of charge.    The law having conferred upon each child of proper age the right to be taught the enumerated branches, any rule or regulation which, by its enforcement, would tend to hinder or deprive the child of this right can not be sustained.    All rules must be adapted to the promotion and accomplishment of this great and paramount object of the law.

The law, for the purpose of preserving the school and promoting its usefulness, has empowered the directors to suspend or expel scholars, but only for disobedient, refractory or incorrigibly bad conduct.    It is by the commission of one of these acts, alone, that the pupil can forfeit his right to the privileges of the school; and this forfeiture can only be enforced, and the right lost, after all other reasonable means have failed.    Nor is the suspension or expulsion designed merely as a punishment of the child, but principally as a means of preserving order and the proper government of the school.

As to the means the directors may employ for the purpose of imparting knowledge in the enumerated branches, and the extent of their power to compel the pupils to study all of them, or whether that is optional with the parent or guardian, we do not pretend to decide in this case.    That question is not presented by this record, nor has it been discussed by counsel.    We therefore pass it over until it is properly presented.    The question here presented is, whether the power has been granted the directors to compel scholars to study other and higher branches than those enumerated in the law.

It is obvious to the minds of all, that the General Assem-

bly did not intend to clothe the school directors with power to erect and maintain seminaries. academies, colleges or universities, and compel the teaching of the regular course of studies usually adopted by those bodies. The attempt to exercise such a power would be futile. It would bankrupt the people, fail to impart the education designed to be conferred by such institutions, and would not, it is believed, materially elevate the standard of education among the great body of the people, as only a small number have united the capacity and inclination to acquire such a liberal education. We presume no one would contend that the permission to teach other and higher branches, could be tortured into the meaning that it embraces the courses pursued in such institutions. We regard this as true, beyond all dispute. There is, then, a limit to the power to have other and higher branches taught in our common schools.

Nor can we hold that this license to have other and higher branches taught empowers the directors to establish and maintain high schools, as they are denominated. If the proviso in the 19th section, referred to, conferred such power, why create such schools by special enactments, which are found in large numbers in our statutes? If such powers were intended to be conferred by the general School Law, the General Assembly would not have so repeatedly conferred, by special enactment, powers already possessed by school directors. This is an interpretation given by the General Assembly that is entitled to much weight in ascertaining the legislative intention in framing our common school system.

If, then, the directors have no power to prescribe the academic or collegiate course, nor the high school system, they would have no power to compel pupils to pursue such a course under penalty of expulsion. To be able to enforce a compliance with the regulations they may prescribe, they must have legal authority for their adoption. If there be no legal power to adopt them, there can be no lawful authority to enforce a compliance. The latter is embodied in and flows

from the former.   Then, what is the extent of the power of the directors as to the other and higher branches permitted to be taught?

They may undeniably require the teacher to impart instruction in other and higher branches than those enumerated, but that is discretionary, and being discretionary, they can not be compelled to make the requirement; it is only permissive to the directors, and is optional with parents, guardians or pupils, whether the scholar shall study such branches, and being optional, pupils can not be compelled to pursue such studies without the assent of the parent or guardian, or their own consent.   Even if, under our constitution, the General Assembly has the power to provide for compulsory education, they have adopted no law looking to such a system; nor can we suppose that any body of practical men, in adopting such a system, would ever endeavor to compel generally what is known as *liberal education; nor does our present School Law contemplate the power of the directors to enforce the higher branches, under the penalty of a forfeiture of the right of the child to avail of instruction in the enumerated branches.

Parents and guardians are under the responsibility of preparing children intrusted to their care and nurture, for the discharge of their duties in after life.   Law-givers in all free countries, and, with few exceptions, in despotic governments, have deemed it wise to leave the education and nurture of the children of the State to the direction of the parent or guardian.   This is, and has ever been, the spirit of our free institutions.   The State has provided the means, and brought them within the reach of all, to acquire the benefits of a common school education, but leaves it to parents and guardians to determine the extent to which they will render it available to the children under their charge.

We are, therefore, clearly of opinion the General Assembly have invested school directors with the power to compel the teaching of other and higher branches than those enumerated,

to those willing to receive instruction therein, but has left it purely optional with parents and guardians whether the children under their charge shall study such branches. As to the character of the higher branches that may be required to be taught, there is no necessity of now determining; but from what has been said, it follows that the directors had no power to expel appellee from the school and its privileges and benefits, because she, under the direction of her parents, refused to study book-keeping, as it is not one of the branches enumerated in the statute, and is one her parents had the option to have taught her, as the directors had provided that it should be taught in the school; and the directors having no such power, they could not lawfully expel appellee from the benefits and privileges of the school, for a refusal to comply with this requirement, and when they did so with force, it constituted a trespass. What they did by the teacher, they did by themselves, according to a familiar maxim of the law. Nor could the teacher justify under the authority of the directors, as they could not, under the law, authorize him to perform an illegal act, as this was, and having committed the trespass, they are liable to respond in damages.

It is also urged, as a ground of reversal, that the damages are excessive, as no personal injury was inflicted on appellee. All the circumstances considered, we regard them as quite moderate. There is nothing to show that the deportment of appellee, in school, was ever anything but strictly proper. She firmly and resolutely contended for her rights, but, so far as the record discloses, not in an unseemly or indecorous manner. She was subjected to a great indignity in the presence of her associates and the scholars in the school. Appellants were fully informed that her parents unconditionally objected and forbade her engaging in the required study. Others of her class, falling equally within the rule, were not required to enter upon the study of this branch, from which it might be inferred that other motives than simply a desire to enforce the rule may have entered into and formed at least a part of

the reasons for so rigid an application of the requirement, and. above all, she was deprived of the means of pursuing her education in the common school, after her expulsion, for aught that appears, for the remainder of the time the law gave her the right, which may not have been of trifling importance.

We are fully impressed with the fact that the jury were not actuated by prejudice or passion in their finding, but fairly and dispassionately considered the case, and were fully warranted by the evidence in assessing the damages as they did, and the judgment of the court below must be affirmed.

*Judgment affirmed.*