87  303
167  79
87  303
175  535

## The Trustees of Schools

### *v.*

### The People *ex rel.* Martin Van Allen.

1. School law—*high schools.* The object of the law allowing the establishment of high schools in townships, is to afford increased facilities for acquiring a good education in free schools. Such schools must be open to all pupils alike who are sufficiently advanced to need their instruction. The duties of the trustees to such schools are the same as those of directors with respect to district schools, and their powers are governed by the same law.

2. SAME—*powers of trustees.* The trustees of a township are invested with power to decide what branches of study shall be taught in the high school, what text-books shall be used, and to prescribe necessary rules and regulations for the management and government of the school, but not to decide what particular branches of study of those decided to be taught, shall be pursued by each pupil.

3. Under the power to prescribe necessary rules and regulations for the management and government of the schools, they may require a classification of the pupils with respect to the branches of study they are respectively pursuing, and with respect to proficiency or degree of advancement in the same branches, and that there shall be prompt attendance, diligence in study, and proper deportment.

4. SAME—*how far parent may control studies.* No parent can insist that his child shall be placed or kept in particular classes, when by so doing others will be retarded in their studies, or that his child shall be taught studies not in the prescribed course of the school, or be allowed to use a text-book different from that adopted, or that he shall be allowed to adopt methods of study that interfere with others in their studies.

5. The laws of this State do not deny the parent all control over the education of his child. They only withdraw from him the right to select the branches to be studied by the child to the extent that the exercise of that right will not interfere with the system prescribed for the schools. No particular branch of study is compulsory upon those who attend school.

6. Where the relator's son passed a satisfactory examination in all the studies taught in a high school, except that of grammar, which the father did not desire him to study, and was refused admission to pursue the other branches simply for his deficiency in grammar: *Held,* on a proceeding by *mandamus,* that as the father did not wish his son to study grammar, the son had a right to admission as to the other studies, and that any rule or regulation excluding a pupil on that ground was unreasonable and could not be enforced.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. JOHN P. WILSON, and Messrs. STEELE & JONES, for the appellant.

Mr. G. A. FOLLANSBEE, and Mr. FRANCKE C. ELLIOTT, for the appellee.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was a proceeding by *mandamus* to compel the trustee of schools of the town of Lake View to admit the relator's so

Frank Van Allen, as a pupil in the high school of that town.

The respondents demurred to the petition, but the court overruled the demurrer, and the respondents electing to stand by their demurrer, judgment was given awarding a peremptory *mandamus* to the respondents to admit Frank Van Allen to the high school.

The technical objection urged against the petition on the ground of multifariousness, in view of the present liberality in pleadings in relation to matters not substantially affecting the question to be litigated, must be held to be without merit. The matter objected to might have been stricken out on the trial without working a continuance, and it was totally disregarded by the court in its judgment. Whatever of error there may have been in its inclusion in the petition, did not and could not have prejudiced the respondents.

The material question is, were the respondents authorized, for the cause by them alleged, to deny to relator's son admission to the high school?

The facts stated in the petition, which the demurrer admits, are, the relator, being a citizen and tax-payer of the township, applied to the respondents to have his son admitted as a pupil in the high school. The son passed a satisfactory examination and was sufficiently proficient in all branches of study, except that of grammar, to entitle him, under the regulations prescribed by respondents, to admission to the high school. The relator had forbidden his son to study grammar, and desired that he should pursue no study which necessitated a previous knowledge of grammar—and asked that he be admitted to pursue only those studies in which he was sufficiently proficient to entitle him to admission to the high school. The respondents denied the son admission to the high school, solely because of his inability to pass satisfactory examination in grammar.

The high school was established under the fourth clause of section 35 of the school law, which is as follows: "Upon

petition of fifty voters of any school township, filed with the township treasurer at least fifteen days preceding a regular election of trustees, it shall be the duty of said treasurer to notify the voters of the township that an election "For" and "Against" a high school will be held at the next ensuing election of trustees, and the ballots to such effect shall be received and canvassed at such election; and if the majority of the voters at such election shall be found to be in favor of a high school, it shall be the duty of the trustees of the township to establish at some central point, most convenient for a majority of the pupils of the township, a high school for the education of the more advanced pupils." (Rev. Stat. 1874, p. 957.)

The next clause provides, "For the purpose of building a school house, supporting the school, and other necessary expenses, the town shall be regarded as a school district, and the trustees shall have the power and discharge the duties of directors for such district in all respects."

It is apparent the object of the legislature was simply to increase the facilities for acquiring a good education in free schools. The high school thus established can no more be controlled for the benefit of some to the exclusion of others, than can the district school. All children in the township, within the prescribed ages for admission to the public schools, have equal rights of admission to the high school when they are sufficiently advanced to need its instruction. It would be contrary to natural right and the manifest purpose of the legislature, to hold that the high school, by arbitrary and unreasonable regulations of the trustees, should be practically closed to all but a favored few. Every tax payer contributes to its maintenance, and there should be no arbitrary regulation to prohibit the enjoyment of its benefits, in equal degree by all.

It is, of course, to be kept in view that its purpose is the teaching of more advanced branches than those taught in the district school, and that to insist that precisely the same studies should be pursued there as in the district school, would be to defeat the purpose of its creation.

The powers and duties of the trustees being, with respect to the high school, the same as those of directors with respect to the district school, it becomes necessary to ascertain what are the powers and duties of directors with respect to district schools. So far as they affect the question before us, they are " to adopt and enforce all necessary rules and regulations for the management and government of the schools; to direct what branches of study shall be taught, and what text-books and apparatus shall be used, and to enforce uniformity of text-books." (Rev. Stat. 1874, p. 962–3, § 48.)

Here, then, is power to decide what branches of study shall be taught in the high school, what text-books shall be used, and to prescribe necessary rules and regulations for the management and government of the school; but not to decide what particular branches of study, of those decided to be taught, shall be pursued by each pupil. Under the power to prescribe necessary rules and regulations for the management and government of the school, they may, undoubtedly, require classification of the pupils with respect to the branches of study they are respectively pursuing, and with respect to proficiency or degree of advancement in the same branches; that there shall be prompt attendance, diligence in study, and proper deportment. All regulations or rules to these ends are for the benefit of all, and, presumptively, promotive of the interests of all. No parent has the right to demand that the interests of the children of others shall be sacrificed for the interests of his child; and he can not, consequently, insist that his child shall be placed or kept in particular classes, when by so doing others will be retarded in the advancement they would otherwise make; or that his child shall be taught studies not in the prescribed course of the school, or be allowed to use a text-book different from that decided to be used in the school, or that he shall be allowed to adopt methods of study that interfere with others in their studies. The rights of each are to be enjoyed and exercised only with reference to the equal rights of all others.

But no attempt has hitherto been made in this State to deny, by law, all control by the parent over the education of his child.   Upon the contrary, the policy of our law has ever been to recognize the right of the parent to determine to what extent his child shall be educated, during minority—presuming that his natural affections and superior opportunities of knowing the physical and mental capabilities and future prospects of his child, will insure the adoption of that course which will most effectually promote the child's welfare.   The policy of the school law is only to withdraw from the parent the right to select the branches to be studied by the child, to the extent that the exercise of that right would interfere with the system of instruction prescribed for the school, and its efficiency in imparting education to all entitled to share in its benefits. No particular branch of study is compulsory upon those who attend school, but schools are simply provided by the public in which prescribed branches are taught, which are free to all within the district between certain ages.   In most primary schools it would be both absurd and impracticable to require every pupil to pursue the same study at the same time.   Discrimination and preference between different branches of study, until some degree of advancement is attained, is inevitable— and, afterwards, a due regard for the interests of the child will always require it, in greater or less degree.

It is not claimed that every pupil attending the high school must pursue every study taught therein, and manifestly, in the absence of legislation expressly requiring this, a regulation to that effect would be regarded as arbitrary and unreasonable, and could not, therefore, receive the sanction of the courts. Conceding that all the branches of study decided to be taught in the school shall not necessarily be pursued by every pupil, we are unable to perceive how it can, in anywise, prejudice the school, if one branch rather than another be omitted from the course of study of a particular pupil.

If the relator's son had possessed the required knowledge of grammar, but would not have been compelled to further pursue

that branch of study or to pursue any other branch of study to which a knowledge of grammar was essential, it is impossible to perceive how his position in the high school, so far as it might affect teachers and pupils, would be different from that he now occupies. He is qualified to pursue, as a pupil, every branch of study that the relator desires that he shall pursue in the high school. If he is qualified to go on with the studies selected by the relator, of what consequence is it that he is ignorant of some branch of study in no manner connected with those branches? This may, possibly, be a misfortune to Frank Van Allen—it surely can not affect the government of the school or incommode the other students or the teachers. Whether fortunate or unfortunate to him, however, it is for the parent, not the trustees, to direct the branches of education he shall pursue, so far as they are taught, and he is by necessary preliminary education qualified to pursue them, in the high school.

It is possible that a father may have very satisfactory reasons for having his son perfected in certain branches of education to the entire exclusion of others; and so long as, in exercising his parental authority in making the selection of the branches he shall pursue, none others are affected, it can be of no practical concern to those having the public schools in charge.

We think the exclusion of the relator's son from the high school, upon the ground alleged, by the respondents, unauthorized by the statute. The regulation requiring it is arbitrary and unreasonable, and can not be enforced, but must be disregarded.

In *Rulison et al.* v. *Post*, 79 Ill. 567, views were expressed in harmony with what has been here said, although the question there decided was materially different from that presented here.

*Morrow* v. *Wood*, 35 Wis. 59, presents the question of the right of a teacher to punish a pupil for refusing, under parental objection, to pursue the study of geography, and the ruling was against the right. The opinion is able and in-

structive, and demonstrates to our satisfaction the correctness of the conclusion.

We think the judgment below right, and it will be affirmed.

*Judgment affirmed.*