MICHAEL D. LONG, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, EX REL. NERI T. HOXIE, DEFENDANT IN ERROR.

1. **Mandamus**: DEFECTS IN ALTERNATIVE WRIT: WAIVER. Where an alternative writ of mandamus fails to state facts sufficient to entitle the relator to the performance of the duty sought to be enforced, such defect may be taken advantage of by a demurrer, the same as in any other action, and the same right to answer, in case the demurrer is overruled, will exist in favor of a respondent as in any other proceeding.—[Per MAXWELL and REESE, J.J.

2. **Elections:** CANVASSING RETURNS: MANDAMUS. Where there are but one set of papers purporting to be the returns of an election from a given precinct delivered to the county clerk, or his deputy, or in his office, within the time limited by law for the canvassing of the returns of such election, it is the duty of such clerk to canvass such returns in the manner provided by statute, although such returns may not have been sealed up, marked, bound together, or directed as provided by law. And such duty will be enforced by mandamus.

ERROR to the district court for Holt county. Tried below before TIFFANY, J.

*Thomas Carlon* and *D. A. Holmes*, for plaintiff in error.

*H. M. Uttley*, for defendant in error.

COBB, CH. J.

This is a case of error to the district court of Holt county for the allowance of a peremptory writ of mandamus against the plaintiff in error, who is county clerk of said county, requiring him to canvass certain votes cast in said county at the general election of 1883.

Two questions are presented by plaintiff in error in his brief:

1. That the alternative writ is insufficient as a basis for the awarding of a peremptory writ, for the reason that the alternative writ fails to disclose any interest in the subject matter of the proceeding on the part of the relator, even that he is a citizen of Holt county.

2. The duty enjoined upon a board of canvassers is of a quasi judicial character, while the writ of mandamus will only issue to compel the performance of a purely ministerial duty.

In the case of *The State v. Stearns*, 11 Neb., 104, this court, by Ch. J. MAXWELL, say: "The objection that the relator cannot maintain the action is not well taken. When the question presented is one of public right, and the object

of the action is to enforce the performance of a public duty, it is sufficient for the relator to show that he is a citizen, and as such interested in the execution of the laws." [Citing authorities.] "Sufficient appears in the application to show that the relator is a citizen and interested in the execution of the laws. This statement should have been made in the alternative writ also, as the writ must contain a statement of all the facts relied upon to entitle the party to the relief prayed for. But the objection is to the want of legal capacity of the relator to sue, and unless objected to by demurrer or answer is waived."

In the case at bar the affidavits upon which the alternative writ issued, and which stand in the place of a relation to it, are not sent up with the record. The plaintiff in error, being ex officio clerk of the district court of Holt county, is the legal custodian of said affidavits; beside, it was his duty to bring up all the records which might contain the allegation, of the absence of which he seeks to take advantage. It must therefore be presumed that the absent relation contains the allegation of citizenship on the part of the relator.

The plaintiff in error made answer to the alternative writ, his answer consisting of six paragraphs, the first of which being in the following words:

"1. That the allegations of said writ, and the facts recited therein, are not sufficient to put respondent upon his defense or warrant him in obeying the command of said writ."

This is, to all intents, a general demurrer to the alternative writ, a pleading which is not recognized in this class of cases by the statute. "No other pleading or written allegation is allowed than the writ and answer. These are the pleadings in the case, and have the same effect and are to be construed and may be amended in the same manner as pleadings in a civil action; * * *" Code, § 653.

I do not understand this statute to mean that while de-

murrers are not recognized in this proceeding, yet that a party defendant may insert a paragraph in the body of his answer, which he may have treated as a general demurrer. But I think that demurrers are no more allowed to a writ of mandamus in effect than they are in form. But it may be asked, is there no way by which the respondent may take advantage of an informal or defective alternative writ of mandamus? My reply to that question is, that whatever defects in a writ of this kind could have been taken advantage of under the old system of practice by plea, can now be, by answer. Plea in abatement was then the appropriate pleading. An answer in the nature of a plea in abatement is the appropriate, I think the only one, now. But it was an inflexible rule governing pleas in abatement, that they always gave a better writ. That is to say, they not only suggested that the writ plead to was defective, but pointed out in what its defectiveness consisted, and how it could be made perfect. And this rule was well founded in reason and convenience, and is quite adapted to our present liberal practice in regard to amendments. In the case at bar, had the defendant in his answer pointed out the defect in the allegations of the writ, it is scarcely to be supposed possible that the relator, with the provisions of statute above quoted before him, would have failed to amend his writ. It must therefore be held that the plaintiff in error, by omitting to point out by answer the defects now insisted upon in the writ, waived the same, and cannot be heard upon them in this court.

2. The 2d, 3d, 4th, 5th, and 6th paragraphs of said answer may be considered together. In the first the defendant alleges that he, on the tenth day of November, 1883, together with Frank Campbell and D. C. Hamson, two disinterested electors of Holt county, proceeded to canvass the returns of the election, etc., and did canvass all returns received by him prior to the final adjournment of said board, except the votes cast for county clerk of said

county.  In the second he alleges that on the twelfth day of November, 1883, the county judge of said Holt county called to his assistance Frank Campbell and D. C. Hamson, two disinterested electors of said county, and proceeded to canvass the returns of votes cast at said election for county clerk, etc.  By the fourth he alleges that after the said canvass had been made, and prior to the service upon him, the said respondent, of the alternative writ of mandamus in the said action, the respondent issued certificates of election to the various county officers, naming them.  By the fifth, that prior to the completion of the canvass of the returns of the said election, official returns of such election had been received by the respondent from each and all of the various precincts of said county, except one, to-wit, Wyoming, from which said precinct no returns were received prior to the completion of said canvass, nor have any legal returns of the election held in said precinct ever been received by respondent as provided by law.  And by the sixth paragraph, that prior to the commencement of the canvass of the returns of the said election, and before the said Frank Campbell and D. C. Hamson had been called by respondent to assist him in the canvass of the said returns, there was handed to E. S. Kinch, deputy county clerk of said county, by a certain resident of Wyoming precinct, a common paper sack, such as is used by merchants for doing up articles of merchandise, which paper sack was unsealed, and bore the inscription "Wyoming precinct," only, and was said to contain the returns of an election held therein.  That no evidence was furnished to respondent, either prior to or during the canvass of the returns of the various precincts of said county, tending to prove that said sack contained the returns of the election held in said precinct, and the contents of said sack were not included in the canvass of the returns of said election, and no returns were ever made or received from said precinct.

It seems sufficiently clear from the above that the re-
turns of the election from Wyoming precinct were received
at the office of the county clerk in time to have been can-
vassed along with the other returns; but that they were
not canvassed, for the reason that they were contained in a
common paper sack, and were not sealed up nor properly
directed.

Almost if not precisely this question has been before this
court in a number of cases, and the holding has been uni-
form, to the effect that the duties of canvassers are purely
ministerial. A case might occur of two or more sets of
papers being sent in, both purporting to be returns of the
same election from the same precinct. In that case I think
that the canvassers would of necessity be obliged to exer-
cise some discretion or quasi judicial power in order to se-
lect which set of papers should be treated as the returns;
but I can imagine no other case in which they are possessed
of any discretion or judicial power whatever. It is doubt-
less the duty of the judges of the election to seal up the
returns, and among other things to direct them to the
county clerk; but a failure to discharge this duty by the
judges of election in the manner provided by law, will by
no means excuse the county clerk for failing to canvass
such returns as in point of fact are delivered to him within
the time limited by law.

In the case at bar the package was delivered to the clerk's
deputy, presumably in the office. Although unsealed and
otherwise informal, he knew what it was. There was no
other package before him which was claimed to be returns
of the election from Wyoming precinct, so the only theme
for mental debate which the situation presented to the
board was, whether they would obey the law or not.

I deem it only necessary to refer to the cases of *The
State, ex rel. Birmingham, v. Dinsmore*, 5 Neb., 145. *Hagge
v. The State*, 10 Id., 51. *The State, ex rel. Townsend, v.
Hill*, Id., 58. *The State v. Stearns, supra.*

The judgment and final order of the district court are affirmed.

JUDGMENT AFFIRMED.

REESE, J.

While I concur in the final conclusion arrived at in the foregoing opinion, I am compelled to express my·dissent from a part of the argument by which that conclusion is reached.

As to the doctrine quoted from *The State v. Stearns,* 11 Neb., 104, I have nothing to say, that being now, perhaps, the settled law of this state. Were the question before this court for the first time, I think I should insist upon the rule that the relator must *by his writ* show all the facts necessary to entitle him to the peremptory writ, and that the affidavit upon which that writ was founded could not be looked to as a prop or brace to sustain that which the statute says must be the *only* pleading except the answer. Upon the allegations of that pleading—made so by express statute—I think the relator should stand. The alternative writ is his petition. By that and that alone should his case be measured so far as the allegations or statements of fact are concerned. But this court having held otherwise, by a written opinion in which the merits of a case were passed upon, I do not propose further discussion of the question.

In my opinion the rules of practice in mandamus cases should be the same as in other cases, except in so far as they are changed by statute; and that the section of the statute (653, civil code) quoted in the foregoing opinion, must be construed in connection with section 89 of the same code. This section provides that, "The pleadings are the written statements by the parties of the facts constituting their respective claims and defenses." By reference to section 653 we find that "no other pleading *or*

*written allegation* is allowed than the writ and answer."
By this language we are forced to the conclusion that the
word "pleading," in this section, refers to the allegations
of fact in the sense in which the word is used in section 89;
that the purpose of the statute was and is to limit the
pleadings by which the issues of fact are formed to the two
named; that the writ should take the place of the petition
and be subject to amendment "in the same manner" as the
petition in a civil action, and that the answer should be
subject to the same rule. In my view, the office of a de-
murrer being for the purpose of testing other pleadings
rather than that of a pleading itself, it was not thought of
or contemplated by the legislature in the adoption of the
section above quoted. It cannot be held to be a "written
allegation" in the sense used in the section. The statute,
referring to the writ and answer, says: "These are the
pleadings in the case, and have the same effect and are to
be construed and may be amended in the same manner as
pleadings in a civil action; and the issues *thereby joined*
must be tried, and the further proceedings thereon had in
the same manner as in a civil action." In my opinion this
section refers alone to the formation of issues of fact.

The legislature by the adoption of the present law sought
to simplify as much as possible the proceeding which had
formerly been held to be the special property, the high
prerogative, of the king. To my mind it has succeeded.
The proceeding by mandamus now stands substantially
upon the same plane as other cases. If the writ does not
state facts sufficient to entitle the relator to the remedy
sought it should be demurred to, and the question of its
adequacy decided before proceeding further. If the writ
is found to be sufficient, then issues of fact can be formed
by filing an answer, "and the issues thereby joined must
be tried * * * * in the same manner as in a civil
action."

I cite the following authorities which, I think, support

the views herein expressed: *The State, ex rel. Ayres, v. Stockwell,* 7 Kan., 98. *The State, ex rel. The A., T. & S. F. R. R. Co., v. The County Comrs. of Jefferson County,* 11 Id., 67. High on Ex. Leg. Rem., § 451.

MAXWELL, J.

I concur in the views of Judge REESE, that the answer required by the statute is one raising issues of *fact* and not of law; in other words, the answer is what at common law was designated the "return to the writ." Prior to the statute of 9 Anne the return was not traversable, and the only remedy of the relator if it was false was an action for a false return. High on Ex. Rem., § 457, and cases cited. By the statute of Anne the plaintiff was permitted to traverse the return. The proper function of an answer or return is to show sufficient cause for failing to comply with the terms of the writ. The return should contain positive allegations of fact, and not mere inferences. *Co. Comms.,* 37 Penn. St., 237–277. *Gorgas v. Blackburn,* 14 Ohio, 252. *Society v. Com.,* 52 Penn. St., 125. *State v. Avery,* 14 Wis., 122. *People v. White,* 11 Abb. Pr., 168. The writ should state facts showing that the defendant is in default in the performance of a legal duty then due at his hands, and that the relator has a right to require him to perform such duty. If it fails to show such liability or right, a demurrer is the proper mode of raising the question. A mandamus in this country is a mere civil action, and the rules of pleading in other civil actions should be applied as far as possible in furtherance of justice. In my view a demurrer to the writ is not a return or answer within the meaning of the statute, and being overruled the defendant still may be permitted by the court to file an answer to the writ.