STATE, EX REL. CLAUDE S. KELLEY, APPELLEE, V. WILLIAM H. FERGUSON ET AL., APPELLANTS.

FILED JANUARY 7, 1914.    No. 18,128.

1. **Mandamus:** PETITION: DEMURRER.    The rule announced in *State. v. Chicago, St. P., M. & O. R. Co.,* 19 Neb. 476, that, "Where it is sought to test the sufficiency of a petition for a mandamus, the proper course is to demur to the petition upon the ground that the facts stated therein do not entitle the relator to the relief sought," reaffirmed, and the criticism of this practice announced in *State v. Home Street R. Co.,* 43 Neb. 830, is withdrawn.

2. **Schools:** SELECTION OF STUDIES.    The right of a parent to make a reasonable selection from the prescribed course of studies which shall be carried by his child in the free public schools of the state is not limited to any particular school, nor to any particular grade in any of such public schools.

3. ———: AUTHORITY OF OFFICERS.    The public schools of the state are entitled to the earnest and conscientious support of every citizen.    To that end the school authorities should be upheld in their control and regulation of our school system; but their power and authority should not be held to be unlimited.    They are required to exercise their authority over and their desire to further the best interests of their scholars, with a due regard to the natural and legal rights of the parents of such children.

4. **Mandamus:** SCHOOLS: SELECTION OF STUDIES.    And when a parent makes a reasonable selection from the course of studies which

has been prescribed by the school authorities and requests that his child may be excused from taking one of such studies, the request should be granted. If the request be denied and the child is expelled or suspended for a refusal to continue such study, mandamus will lie to compel reinstatement.

5. *State, ex rel. Sheibley, v. School District*, 31 Neb. 552, reexamined and adhered to.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*C. S. Allen,* for appellants.

*Frank E. Edgerton, Ray J. Abbott, William B. Price* and *C. S. Kelley, contra.*

FAWCETT, J.

From a judgment of the district court for Lancaster county, awarding relator a writ of mandamus requiring defendants to reinstate his daughter in the public school in the city of Lincoln, respondents appeal.

The petition alleges: That prior to December 17, 1912, plaintiff had instructed his daughter, Eunice Kelley, "not to go to the class in domestic science; that said class was conducted in a building more than a mile distant from the Saratoga school which she was attending, and that the time consumed by said class was almost a half day, thereby causing the said Eunice Kelley to fall behind in her other studies for lack of time; that the respondents wrongfully and unlawfully and against the protests of relator required said Eunice Kelley to take said course in domestic science, and on the 17th day of December, 1912, the respondents wrongfully, unlawfully, and without cause therefor dismissed said Eunice Kelley from said school, and refused and have ever since refused to allow her to attend school of said district, although since said time relator has several times made demand upon the said school board and its officers to reinstate her." The answer admits the formal allegations in the petition, and alleges: That in the course of study adopted by the school

district of Lincoln, which, it is alleged, is substantially the same as the courses of study in all other municipal school districts of the United States, there are eight grades below the high school; that Eunice Kelley is 12 years old, and is a sixth grade pupil attending the Saratoga school; that all subjects in the sixth grade are required subjects, and one of these is domestic science; that no pupils are excused from taking any subjects in said grade except for good cause; that no cause was shown and none existed for excusing the said Eunice from attending said class; that the demand of the relator was arbitrary, unreasonable, and without just basis; that respondents could not comply with such arbitrary and unreasonable demand without undermining and destroying the discipline of the schools; that industrial training is essential to the welfare of the public, and it is the function of the state to require courses to be given affording industrial training; that in the exercise of this function a course in domestic science was prescribed for the sixth grade in the schools of the district; that in requiring attendance in classes in which this subject was taught the board of education was acting within its powers, and it could not excuse any pupils from taking said course unless a good and sufficient reason for such excuse was shown. The court found the facts as alleged in the petition, and awarded the writ as prayed.

It is urged that the petition does not state a cause of action. The ground of the contention is that it does not state the age of the child. Respondents in their answer set out the age, and relator now contends that the defect in the petition was cured by the allegation in the answer; and that the settled rule that, where the sufficiency of the petition is not attacked until after judgment, all reasonable intendments should be indulged in support of the judgment, applies. Counsel for respondents admits the general rule in civil procedure, but contends that it is not the rule in mandamus, for the reason that the latter is an extraordinary remedy and special procedure is provided

by statute, that no pleadings are allowed except the application, the writ, and the answer, and cite *State v. Home Street R. Co.,* 43 Neb. 830, in support of the contention. In that case the first paragraph of the syllabus holds: "Parties to mandamus proceedings should pursue the practice established by the code of civil procedure. The practice of attacking the application for the writ by motion or demurrer is one which will not be encouraged." Notwithstanding that statement in the syllabus, the learned commissioner who wrote the opinion said (p. 834) : "This court has, however, permitted cases to be finally heard in pursuance of a rule to show cause, on the application and return thereto, and, the parties having agreed to so proceed herein, we shall treat the motion and demurrer as if they were regular, merely remarking that the practice is not one to be encouraged, and that the irregular nature of the proceeding renders the application to the case of established rules of pleading somewhat difficult." No reference is made in the opinion to the former holdings of this court upon that point. In *Long v. State,* 17 Neb. 60, we said: "Where an alternative writ of mandamus fails to state facts sufficient to entitle the relator to the performance of the duty sought to be enforced, such defect may be taken advantage of by a demurrer, the same as in any other action, and the same right to answer, in case the demurrer is overruled, will exist in favor of a respondent as in any other proceeding." In *State v. Chicago, St. P., M. & O. R. Co.,* 19 Neb. 476, we held: "Where it is sought to test the sufficiency of a petition for a mandamus, the proper course is to demur to the petition upon the ground that the facts stated therein do not entitle the relator to the relief sought." In the opinion (p. 482) it is said that the proper practice in such case is not to move to quash the petition or affidavit upon which the writ is sought, "but to demur for some of the causes stated in the code.   *   *   *   Mandamus is not a prerogative writ in this state, but a remedy given to the citizen to enable him to assert his rights and obtain justice.   *   *   *   Hence, the ordinary rule of pleading, where there are no special

provisions of the statute to the contrary, apply to proceedings by mandamus." The right to demur in a mandamus case is also recognized in *State v. Spicer,* 36 Neb. 469, and in *State v. Love,* 89 Neb. 149. We think the question of the right to assail a defective petition for mandamus by demurrer has been too long recognized to admit of a contrary holding now.

The issue presented by the pleadings and decided by the district court is clean-cut and raises the single question: Can the parent of a child in a city graded school decide the question as to whether or not such child shall be required to carry any particular study which has been prescribed by the board of education; or does the power to make such decision rest entirely in such board? Or, to state it another way, has the parent a right to make a reasonable selection from the prescribed studies for his child to pursue, and, having done so, must this selection be respected by the board of education? If the parent has such right, the judgment in this case must be affirmed, for we do not think a case could be presented where a selection made by a parent would more clearly be a reasonable selection than the one attempted to be made in this case. The relator's child was a girl 12 years of age. She was in the sixth grade. The study which the relator directed her not to take was that of cooking, which is required under the subject of domestic science. The other studies which she was required to take and was taking were reading, spelling, arithmetic, geography, general lessons, drawing and writing. The testimony of the father is that at the time the disagreement arose the daughter was studying music, which required not less than two hours a day. If the relator desired to have his daughter study music, he had the unquestionable right to have her do so, and if he thought that the taking of lessons in music, in addition to the studies she was taking in school, as above set out, was all she was able to carry, then, if he had a right to make a selection at all, it must be conceded that it was reasonable for him to select the lesson in domestic science, which took substantially one-tenth of her entire school

time, as the lesson to be dropped, in order that she might continue her music. It is contended that this selection was not made by the relator in good faith, but was made because of the fact that the school authorities declined to permit his daughter, at the close of the cooking lesson at the Capitol school, to which the class were taken in a body by the teacher from the Saratoga school, to return to her home on the Seventeenth street car line, instead of requiring her to return with the entire class to the Saratoga school and to be there dismissed. We do not think this fact, even if it were the cause which finally impelled relator to make his attempted selection, is very material. The important question to the school board and to parents generally is that of the right of a parent to make a reasonable selection from the prescribed studies for his child to pursue.

The question is not a new one. It was considered and decided by this court in *State, ex rel. Sheibley, v. School District,* 31 Neb. 552. In that case the father expressed a desire to have his daughter study grammar instead of rhetoric. His wish was respected and the change made. Subsequently he objected to her studying grammar and demanded that she be excused from continuing the study. When asked what reason he had for not wanting his daughter to pursue the study, he informed the board "that said study was not taught in said school as he had been instructed when he went to school." That was the only reason he would offer for not wanting his daughter to pursue the study. Under his direction the daughter refused to pursue the study, and as a result of such refusal she was expelled. An original application for mandamus was made in this court and the writ awarded. The syllabus holds: "The school trustees of a high school have authority to classify and grade the scholars in the district and cause them to be taught in such departments as they may deem expedient; they may also prescribe the courses of study and text-books for the use of the school, and such reasonable rules and regulations as they may think needful. They may also require prompt attendance, respectful

deportment, and diligence in study. The parent, however, has a right to make a reasonable selection from the prescribed studies for his child to pursue, and this selection must be respected by the trustees, as the right of the parent in that regard is superior to that of the trustees and the teachers." In discussing the regulations referred to in the syllabus, Judge Maxwell in the opinion says (p. 555) : "Such regulations are for the benefit of all and tend to promote a common interest and the efficiency of the school. Neither has a parent any right to require that the interests of other children shall be sacrificed for the interests of his children. Therefore he cannot insist that his child or children shall be placed in a particular class, when by so doing other pupils will be retarded in the advancement they would otherwise make; neither can he require that his children be taught branches different from those in the prescribed course of the school, or be allowed to use text-books different from those required by the trustees, nor will he be allowed to adopt methods of study for his children which interfere with methods adopted by the trustees, because, in order to secure efficiency in the school, it is necessary that the different classes work in harmony and co-operate together. A high school is designed for scholars who have passed through the primary grades and are supposed to be able to read, write, and spell correctly, and to be familiar with other branches which need not be noticed. Many, if not most, of the high schools of this state are in fact preparatory schools for the university, and the course of study determined with a regard to that object. The testimony tends to show that Anna Sheibley is about 15 years of age; that she is pursuing studies outside of those taught in the school which occupy a portion of her time. Now, who is to determine what studies she shall pursue in school; a teacher, who has a mere temporary interest in her welfare, or her father, who may reasonably be supposed to be desirous of pursuing such course as will best promote the happiness of his child? The father certainly possesses superior opportunities of knowing the physical and mental capabilities of his child.

It may be apparent that all the prescribed course of studies is more than the strength of the child can undergo; or he may be desirous, as is frequently the case, that his child, while attending school, should also take lessons in music, painting, etc., from private teachers. This he has a right to do. The right of the parent, therefore, to determine what studies his child shall pursue is paramount to that of the trustees or teacher. Schools are provided by the public in which prescribed branches are taught, which are free to all within the district between certain ages. But no pupil attending the school can be compelled to study any prescribed branch against the protest of the parent that the child shall not study such branch, and any rule or regulation that requires the pupil to continue such studies is arbitrary and unreasonable. There is no good reason why the failure of one or more pupils to study one or more prescribed branches should result disastrously to the proper discipline, efficiency, and well-being of the school. Such pupils are not idle, but merely devoting their attention to other branches; and so long as the failure of the students, thus excepted, to study all the branches of the prescribed course does not prejudice the equal rights of other students, there is no cause for complaint." In support of his opinion, Judge Maxwell cites a number of cases, two of which, *Morrow v. Wood,* 35 Wis. 59, and *Rulison v. Post,* 79 Ill. 567, are cited and discussed in the briefs in the instant case.

In *School Board District v. Thompson,* 24 Okla. 1, 24 L. R. A. n. s. 221, the supreme court of Oklahoma, in an opinion handed down May 13, 1909, cite with approval and quote from *Morrow v. Wood, State, ex rel. Sheibley, v. School District, supra,* and *Trustees of Schools v. People,* 87 Ill. 303, and in the syllabus hold: "The school authorities of this state have the power to classify and grade the scholars in their respective districts and cause them to be taught in such departments as they may deem expedient. They may also prescribe the courses of study and text-books for the use of the schools, and such reasonable rules and regulations as they may think needful. They

may also require prompt attendance, respectful deport-
ment, and diligence in study. The parent, however, has a
right to make a reasonable selection from the prescribed
course of study for his child to pursue, and this selection
must be respected by the school authorities, as the right
of the parent in that regard is superior to that of the
school officers and the teachers." It will be observed that
this syllabus is almost a verbatim copy of our syllabus in
the *Sheibley* case. The briefs cite but five states where
the court of last resort have passed upon this question:
Wisconsin, Illinois, Nebraska, Oklahoma and Indiana. In
the first four of these states the decisions are squarely in
line with our holding in the *Sheibley* case, while the fifth
(Indiana) alone holds the other way.

In commenting upon *Morrow v. Wood,* and *Rulison v.
Post, supra,* counsel for respondents say: "The school
the Wisconsin and Illinois courts were considering had no
beginning and no ending. All the children between the
ages of 5 and 21 were in the same room, the older ones as
a rule attending but a few days in the winter. Out of
this motley gathering the teacher, whose preparation rarely
exceeded that of the parents, organized a large number
of classes. The attendance was so irregular that a system-
atic course of study was an utter impossibility. A se-
lection of studies by the parent involved the teacher in no
embarrassment, because there were no grade divisions, no
definite course of study for children of the same grade."
This criticism may apply to *Morrow v. Wood, supra,* as
the school involved in that case was a country district
school. For the same reason the criticism may apply to
*Rulison v. Post, supra,* in which the Illinois court was also
considering a country district school; but two years later
the Illinois court had before it *Trustees of Schools v. Peo-
ple, supra.* In that case the court was considering the
law as applied to a high school, and not only cited and fol-
lowed *Rulison v. Post* but also cited with approval *Mor-
row v. Wood, supra.* In *State, ex rel. Sheibley, v. School
District, supra,* this court was also considering a high
school case, and the same is true of *School Board District*

*v. Thompson, supra.* In *Trustees of Schools v. People, supra,* the first paragraph of the syllabus holds: "The object of the law allowing the establishment of high schools in townships is to afford increased facilities for acquiring a good education in free schools. Such schools must be open to all pupils alike who are sufficiently advanced to need their instruction. The duties of the trustees to such schools are the same as those of directors with respect to district schools, and their powers are governed by the same law." We think this holding by the Illinois court is eminently sound. The right of the parent to make a reasonable selection from the prescribed course of studies which shall be "carried" by his child in the free public schools of the state is not limited to any particular school of that class or to any particular grade in any of such public schools. If the right exists at all, it exists at all times and in every grade.

Counsel for relator cite *State v. Webber,* 108 Ind. 31, and *State v. Bailey,* 157 Ind. 324. In *State v. Bailey* the sole question involved was the constitutionality of a compulsory education act; one of the grounds upon which the act was assailed being that it was an unauthorized invasion of the natural rights of the parent. The court sustained the law, and in support of its holding gave a very good discussion upon the duty and obligation of a parent to educate his child, and illustrated the fact that this duty the parent owes not only to the child but to the commonwealth (p. 329) : "If he neglects to perform it, or wilfully refuses to do so, he may be coerced by law to execute such civil obligation. The welfare of the child and the best interests of society require that the state shall exert its sovereign authority to secure to the child the opportunity to acquire an education. Statutes making it compulsory upon the parent, guardian, or other person having the custody and control of children to send them to public or private schools for longer or shorter periods, during certain years of the life of such children, have not only been upheld as strictly within the constitutional power of the legislature, but have generally been regarded as necessary

to carry out the express purposes of the constitution it-self.  *  *  *  'The matter of education is deemed a legiti-mate function of the state, and with us is imposed upon the legislature as a duty by imperative provisions of the constitution.  *  *  *  The subject has always been re-garded as within the purview of legislative authority. How far this interference should extend is a question, not of constitutional power for the courts, but of expedience and propriety, which it is the sole province of the legisla-ture to determine.  The judiciary has no authority to in-terfere with this exercise of legislative judgment; and to do so would be to invade the province which by the con-stitution is assigned exclusively to the law-making power.'  *  *  *  To carry out the enlightened and comprehensive system of education enjoined by the constitution of this state, a vast fund, dedicated exclusively to this purpose, has been set apart.  Revenues to the amount of more than $2,000,000 annually are distributed among the school cor-porations of the state.  No parent can be said to have the right to deprive his child of the advantages so provided, and to defeat the purpose of such munificent appropria-tions."  In everything that is here said we heartily con-cur.  Wherever education is most general, there life and property are the most safe, and civilization of the highest order.  The public school is one of the main bulwarks of our nation, and we would not knowingly do anything to undermine it; but we should be careful to avoid permit-ting our love for this noble institution to cause us to re-gard it as "all in all" and destroy both the God-given and constitutional right of a parent to have some voice in the bringing up and education of his children.  We be-lieve in the doctrine of the greatest good to the greatest number, and that the welfare of the individual must give way to the welfare of society in general.  The whole cur-rent of modern thought and agitation is "onward."  The people are beginning to realize as never before that, if we continue to jog along in the ruts our fathers before us have made, little will be accomplished in the way of na-tional and social improvement.  The state is more and

more taking hold of the private affairs of individuals and requiring that they conduct their business affairs honestly and with due regard for the public good. All this is commendable and must receive the sanction of every good citizen, but, in this age of agitation, such as the world has never known before, we want to be careful lest we carry the doctrine of govermental paternalism too far, for, after all is said and done, the prime factor in our scheme of government is the American home.

Our public schools should receive the earnest and conscientious support of every citizen. To that end the school authorities should be upheld in their control and regulation of our school system; but their power and authority should not be unlimited. They should exercise their authority over and their desire to further the best interests of their scholars, with a due regard for the desires and inborn solicitude of the parents of such children. They should not too jealously assert or attempt to defend their supposed prerogatives. If a reasonable request is made by a parent, it should be heeded.

In the present case, we think it was not unreasonable for the relator to request that his little girl be permitted, at the close of the cooking lessons on Friday afternoons, to be dismissed and permitted to return to her home by a car line which would require a walk of but one block, instead of being taken by the teacher a mile and a quarter and there dismissed, where she would be compelled to take a car line which would impose upon her a walk of nine blocks, a distance of nearly three-quarters of a mile. We are unable to see how the granting of this request could in any manner have embarrassed the school authorities or have caused any break in the discipline of the school. Had this slight request been granted, this controversy might never have arisen. In addition to this, if the relator desired that his little girl should take music lessons from a private instructor and devote an hour or two a day to that study, in lieu of the modern lesson of cooking in the public school, we are unable to see how excusing her from that lesson could have interfered with the discipline

State, ex rel. Kelley, v. Ferguson.

of the school.   However that may be, this court has expressly decided that the parent has a right to make such selection.   The school authorities undoubtedly knew of that decision.   They also knew that that decision had stood as the law in this state upon this point since March 17, 1891, without any attempt having been made by the legislature to change the law in that regard.   We think the action of the respondents was arbitrary and constituted an invasion of the relator's rights under the law as it had been announced by this court.

The judgment of the district court is therefore

AFFIRMED.

LETTON, J., concurring in conclusion only.

I am unable to agree with a number of statements made in the opinion, and am not willing to go so far with respect to the right of parental control.   I, therefore, concur only in the conclusion that the failure of the child, on her father's direction, to take domestic science is not sufficient to justify her exclusion from the schools.

The legislature has made education compulsory.   While it has failed to designate directly any subjects which a child must be required to study in order to entitle it to school privileges, it has plainly indicated the branches of education in which teachers in the various grades must be qualified.   The subject of domestic science is not one of those required for any grade of certificate; and, while this circumstance is not controlling, I consider it entitled to some weight.   While the board of education of a city is vested with wide discretion, and may, and no doubt wisely did, include the subjects of manual training and domestic science in the course of study in the public schools, the state has by no act or letter indicated that such studies are necessary.   They are not fundamentals upon which a future structure of education must be reared.   In my opinion the right of parental control should apply only to such studies as are plainly essential or which are not, at least, impliedly required to be taught in the grade of school in which the pupil may enroll.

Personally, I am of the opinion that manual training and domestic science are among the most valuable studies in the curriculum, regardless of whether a boy is to become a mechanic, or a girl a housewife; and that they are of more value in preparing for the duties of life and in forming a part of a well-rounded education than some of the other studies usually required. But the legislature has not taken this view, and, as to such branches and others of like relation to the course, a reasonable latitude of choice is still allowed the parent.