Hon. MILO L. BENNETT,
Hon. LUKE P. POLAND, } Assistant Judges.
Hon. ASA O. ALDIS,

---

### GEORGE H. GUERNSEY *v*. DANIEL W. PITKIN.

#### *Schools.*

A requirement by the teacher of a district school, that the scholars in grammar shall write English compositions, is a reasonable one; and if such scholar, in the absence of any request from his parents that he may be excused from so doing, refuse to comply with such a requirement, he may be expelled from school on that account.

It seems also that such requirement would be reasonable and proper in the case of the scholars in a majority of the studies prescribed for district schools by the statute. REDFIELD, Ch. J.

CASE. Plea not guilty and trial by the court, at the March Term, 1859, BARRETT, J., presiding.

The following facts appeared on trial:

The defendant, during the winter of 1857-8, was the prudential committee of a school district, in which the plaintiff, who was then eighteen years of age, resided with his father. The defendant, as such prudential committee, employed a teacher to teach the school in that district, and the plaintiff began to attend the school as a scholar at its commencement, with the purpose of attending through the term, and that he commenced the studies of arithmetic, geography, grammar, reading and writing and intended to pursue them through the term.

Soon after the commencement of the term the teacher required all the scholars in grammar to write compositions regularly during the term, but the plaintiff declined to yield to the requirement, whereupon the teacher informed the defendant, as committee, of the fact, and he visited the school, and there had conversation with the plaintiff, relative to the teacher's requirement, and advised him to yield to it for his own good, as a means of improvement as a scholar ; but the plaintiff did not say whether he would do so or not. The defendant then told the teacher he would see the plaintiff's father on the subject, and have him send the teacher word that he didn't wish to have the plaintiff write compositions, and that if he did so, she need not require it of the plaintiff. The plaintiff came to school the next day, and the teacher asked him if he had brought word from his father, to which he replied that he had not. The teacher then requested him to go to his father and see if he had not some word to send to her on the subject ; whereupon the plaintiff went, and on returning told her that his father said that he had not any business with her, and that if she had any business with him she must come and see him. The plaintiff's father sent no word to her at any time except the above.

Shortly afterwards the defendant, as committee, asked the plaintiff if he would write compositions as required by the teacher, to which he answered that he thought not. The defendant, therefore, as such committee, told the plaintiff that he must not come to school unless he would obey the regulations, and instructed

16

the teacher if he came not to treat him as a scholar unless he obeyed the regulations in respect to writing compositions, or brought a line from his father that he did not wish him to do so. The other scholars of the school obeyed the requirements in this respect, and presented their compositions at the appointed times. The plaintiff declined to do so and did not write any compositions.

The plaintiff continued to attend the school for about three weeks, but in consequence of his declining to obey the requirement in regard to compositions, and not bringing any request as aforesaid from his father, the teacher, acting upon the instructions of the committee, ceased to instruct him, and when he took his place in the class to recite lessons, as he did in some instances, she declined to hear him recite, and when he called on her, as he did in several instances, for assistance in arithmetic, she declined to assist him, saying to him that she did not regard him as a scholar of the school.

In consequence of the teacher thus declining to instruct him, and to recognize him as a scholar, he shortly afterward stopped attending the school.

It appeared that the plaintiff possessed ordinary capacity and was a fair proficient in penmanship. The only reason he assigned to the teacher for declining to write as required, was that he never had written compositions.

It appeared that the town superintendent of common schools, when the teacher was examined for certificate, and on other occasions, advised declamation and composition to be practiced in the schools.

It did not appear that any fault was imputed to the plaintiff, as a scholar, except in his declining to obey the requirement to write compositions.

From these facts the court found that the requirement of the teacher in regard to compositions was reasonable and proper, and that by judicious means, she endeavored to induce the plaintiff to comply therewith, and that there was no sufficient reason for his not complying with it.

The court further found that if the father of the plaintiff had requested the teacher not to require the plaintiff to write compo-

sitions, he would have been excused therefrom, and also that the teacher ceased to instruct the plaintiff as a scholar, acting under the directions of the defendant as committee, as above stated, and for the reason solely that the plaintiff refused to obey the requirement to write compositions, and brought no request from his father that he might be excused from so doing, and that the plaintiff left the school solely on account of the teacher's refusal to instruct him as above mentioned, and upon these facts the court rendered judgment for the defendant, to which the plaintiff excepted.

J. A. *Wing*, for the plaintiff.

Peck & Colby, for the defendant.

REDFIELD, Ch. J.   We are called to determine, in this case, the propriety of excluding a pupil from the common schools, for refusing to write compositions, as it is called.   This will depend upon the reasonableness of the requirement.   Persons will no doubt differ very considerably in regard to the benefit or wisdom of such a course of instruction in the common schools.   There is, no doubt, of late, in some quarters, manifested a disposition to push the extent of instruction in the common schools altogether beyond anything which had been dreamed of when the system was inaugurated.   And it is impossible to determine how far it may or may not be carried hereafter.   The thing is important and will always be popular, and in such cases the natural tendency is onward.   And we feel no disposition to check this onward progress so long as it is conducted with due regard to the legislative provisions upon the subject.

The statute requires " each organized town to keep and support one or more schools, provided with competent teachers, of good morals, for the instruction of the young in orthography, reading, writing, english grammar, geography, arithmetic, history of the United States, and good behavior."

It is not necessary to inquire into the propriety of extending the course of instruction in the common schools, maintained at the public expense beyond this, so as to include those branches

taught in the academies and colleges. There is certainly great reason to question the propriety and even the legality of such an extension. And still it may be more useful and more of general public concern than some things which are done at the public expense. It is too important and difficult a subject to be discussed gratuitously.

But in regard to those branches which are required to be taught in the public schools, the prudential committee and the teachers must of necessity have some discretion as to the order of teaching them, the pupils who shall be allowed to pursue them, and the mode in which they shall be taught. If this were not so, it would be impossible to classify the pupils, or for one teacher to attend to more than ten or twelve pupils.

With this concession to the teacher of fixing the mode of teaching these branches, it seems very obvious that English composition may fairly be regarded as an allowable mode of teaching many of these branches.

It is questionable how far writing should be confined to the mere forms of letters, even if we admit that that may have probably been the primary sense in which it was introduced into the statute. We must still admit that as time advances and improved modes are adopted and those branches become extended, the sense of the terms must also extend. The joining of letters into words and of words into sentences, with the use of capitals and punctuation and correct English, is indispensable to any practical use of writing. And this is composition.

So, too, grammar is more effectually taught by exercises in writing than in any other mode. This is now almost the exclusive mode of teaching the grammar of the classical languages, and the modern European languages. And it is certainly an allowable, and I have no doubt a most efficient mode of teaching English grammar. And this is composition.

The same thing may be said of some of the other branches named in the statute. Orthography signifies literally writing correctly. And composition is the only mode of securing correct orthography in a mode to be of practical utility.

So, too, geography and history are but different forms of writing, and are often most effectually fixed in the memory of the pupil

by requiring him to write out from memory his lessons for the day, or the week past, and sometimes a brief abstract of the lessons for a longer period. And these are but different modes of English composition.

So that in regard to instruction in the specified branches of common school education, the writing of English composition in different forms may be regarded as an allowable mode of teaching the majority of them.

There is truth and force in Lord Bacon's apothegm, wherein he reduces all learning to three processes, reading, writing and speaking. "Reading makes a full man, writing a correct man, and speaking a ready man."

Judgment affirmed.