Filed Oct. 12, 1886.

---

No. 12,758.

## The State, ex rel. Andrew, *v.* Webber et al.

Schools.—*Regulation of Studies.*—*Discretionary Power of School Authorities.*— *Suspension of Pupil.*—*Mandamus to Compel Readmission.*—A rule, prescribed by the superintendent of the free graded schools of a city, with the sanction of the trustees, that the pupils in the high school department shall at stated intervals employ a certain period of time in the study and practice of music, for which purpose they shall provide themselves with a prescribed book, is an exercise of discretionary power conferred by law, and unless the regulation is shown to be unreasonable, or a satisfactory excuse for failing to comply therewith is given, mandamus will not lie to compel the school authorities to readmit a pupil who has been suspended for disobedience thereof.

From the Laporte Circuit Court.

*J. H. Bradley* and *L. A. Cole,* for appellant.

*A. Anderson* and *M. Nye,* for appellees.

Howk, C. J.—On the 19th day of November, 1885, the appellant's relator, Abram P. Andrew, filed his verified complaint or affidavit herein, in the court below, wherein he stated that he was a native-born citizen of the United States and of this State, and was then, and for more than ten years last past had been, a *bona fide* resident householder, freeholder and taxpayer of the city of Laporte, Indiana, and that he then resided, and for more than five years last past had resided, in the third ward of such city; that the appellees Leroy D. Webber, Edward J. Church and Ellis Michael, were the acting board of school trustees of such city, and as such trustees were in charge of the public schools of such city; and that the appellee William N. Hailman was employed by such board as the superintendent of such public schools, and as such superintendent had, under the direction of such board of trustees, the general management, oversight and supervision of such public schools.

The relator further said, that he was the father and natural guardian of one Abram Andrew, who was a white male child, between the ages of six and twenty-one years, to wit, of the age of twelve years, was unmarried, resided with the relator in the third ward of such city, and had so resided with, and been subject to the control of, his father, the relator, ever since his birth; that said Abram Andrew was, in all respects, legally qualified and entitled to attend the public schools of such city as a pupil thereof, and to receive instruction therein; and that, for three years next preceding the grievances thereinafter stated, said Abram Andrew had, in pursuance of his rights and of the relator's rights and wishes, attended such public schools as a pupil therein, during all which time he had been an obedient and diligent pupil, and had faithfully complied with all the rules and regulations prescribed by such board of school trustees and superintendent for the government of such schools.

And the relator further said, that the public schools of such city were what were known as "Graded Schools," one

grade thereof being known as the " High School;" that at
the beginning of the school term of such schools, in the fall
of 1885, the said Abram Andrew, being sufficiently advanced
in his studies, in accordance with the relator's desire and con-
sent, and in compliance with his legal rights in the premises,
was admitted as a pupil in such high school to receive in-
struction therein, and thereafter until his suspension, as
thereinafter stated, was regular in his attendance and deport-
ment, and was obedient and respectful to his teachers, and
properly subordinate to the rules and regulations of such
school; that among the exercises prescribed by such super-
intendent, with the sanction of such board of trustees, for
the pupils of the high school, was a requirement that each
of the pupils should, at stated intervals, employ a certain
period of time in the study and practice of music, and
that they should provide themselves with prescribed books
for that purpose; that the relator, believing it was not for
the best interest of said Abram Andrew and not in accord-
ance with the relator's wishes regarding the instruction of his
said son, in a respectful manner asked of such superintendent
that Abram Andrew might be excused from the study and
practice of music at such exercises, and directed Abram
Andrew not to participate therein, all in good faith and in a
respectful manner, and with no intention of, in any manner,
interfering with the government, rules and regulations of
such schools, except in so far as he might legally control and
direct the education of his said son, which purpose and de-
sire were fully communicated by him to such superintendent.

But the relator said that, notwithstanding his said desire
and request so communicated to such superintendent as afore-
said, the superintendent on or about the 14th day of October,
1885, in disregard of the relator's wishes and request, re-
quired said Abram Andrew to participate in the practice
and study of music, and upon the refusal of said Abram
Andrew to participate in such exercises and study, which he

did without disrespect to such superintendent and entirely because of the relator's direction, which was so communicated to such superintendent as aforesaid, the superintendent suspended said Abram Andrew from such school without assigning any cause therefor other than his refusal to participate in such musical exercises and studies, and, as the relator averred, without any legal cause or justification whatever; that such suspension was reported to, and approved by, such board of school trustees, and the said Abram Andrew, in consequence of such suspension, had been thence hitherto and still was debarred from attendance upon such high school, as a pupil thereof; that after the promulgation of such order of suspension, and before the filing of his verified complaint or affidavit herein, the relator demanded of such board of school trustees the revocation of such order of suspension, and that Abram Andrew be readmitted as a pupil of such high school, which demand such board and each member thereof refused to comply with, but admitted that no charges of misconduct or insubordination existed against Abram Andrew, excepting only his refusal to participate in such musical studies and exercises, in violation of the expressed wishes of the relator; and so the relator said, that his son Abram Andrew was deprived of his right to attend and receive instruction in such high school, without any reasonable or justifiable cause whatever. Wherefore, etc.

An alternative writ of mandate was issued by the court. The appellees appeared and jointly demurred to the relator's verified complaint or affidavit herein, upon the ground that it did not state facts sufficient to constitute a cause of action. This demurrer was sustained by the court. The relator excepted, and, failing to amend, judgment was rendered against him for appellees' costs.

The sustaining of the demurrer to his verified complaint is assigned here, as error, by appellant's relator.

We have given a full summary of the facts stated by the relator, in his verified complaint herein, almost in the language

of the pleader. It will be seen therefrom that the superintendent of the free public schools of the city of Laporte, with the sanction of the trustees of the school city of Laporte, had made a rule or regulation for the government of the pupils of the high school, in the graded schools of such city, requiring that each of such pupils should, at stated intervals, employ a certain period of time in the study and practice of music, and should provide himself with a prescribed book for that purpose. The relator's son, Abram Andrew, was one of the pupils of such high school, and at the instigation, and by the direction, of his father, he disobeyed or violated such rule and regulation, and refused to employ any period of time in the study and practice of music, and to provide himself with the prescribed book, or books, for the purpose of the study and practice of music. For his disobedience of such rule or regulation, and his refusal to comply therewith, the pupil, Abram Andrew, was promptly suspended from the high school, and his suspension was approved by the trustees of the school city of Laporte. This action is brought by the father and natural guardian of the suspended pupil to compel, by mandate, the governing authorities of the school corporation to revoke such suspension, and to readmit such pupil to the high school.

The question for our decision in this case, as it seems to us, may be thus stated: Is the rule or regulation, for the government of the pupils of the high school of the school city of Laporte, in relation to the study and practice of music, a valid and reasonable exercise of the discretionary power conferred by law upon the governing authorities of such school corporation?

In section 4497, R. S. 1881, in force since August 16th, 1869, it is provided as follows: " The common schools of the State shall be taught in the English language ; and the trustee shall provide to have taught in them orthography, reading, writing, arithmetic, geography, English grammar, physiology, history of the United States, and good behavior, and

such other branches of learning and other languages as the advancement of pupils may require and the trustees from time to time direct."

Under this statutory provision, and others of similar purport and effect, to be found in our school laws, it was competent, we think, for the trustees of the school city of Laporte to enact necessary and reasonable rules for the government of the pupils of its high school, directing what branches of learning such pupils should pursue, and regulating the time to be given to any particular study, and prescribing what book or books should be used therein. Such trustees were and are required, by the express provisions of section 4444, R. S. 1881, in force since March 6th, 1865, to "take charge of the educational affairs" of such city of Laporte; "they may also establish graded schools, or such modifications of them as may be practicable; and provide for admitting into the higher departments of the graded school, from the primary schools of their townships, such pupils as are sufficiently advanced for such admission."

The power to establish graded schools carries with it, of course, the power to establish and enforce such reasonable rules as may seem necessary to the trustees in their discretion, for the government and discipline of such schools, and prescribing the course of instruction therein. Confining our opinion strictly to the case in hand, we will consider and decide these two questions, in the order of their statement, namely:

1. Has the appellant's relator shown, by the averments of his verified complaint, that the rule or regulation for the government of the pupils of the high school, in the school city of Laporte, of which he complains, was or is an unreasonable exercise of the discretionary power conferred by law upon the trustees of such school corporation and the superintendent of its schools?

2. Conceding or assuming such rule or regulation to be reasonable and valid, has the relator shown, in his complaint

herein, any sufficient or satisfactory excuse for the non-compliance therewith, and the disobedience thereof, of his son Abram Andrew, a pupil of such high school, or any sufficient or legal ground for the revocation of the suspension of his son, or for his son's readmission as a pupil in such high school?

1. As to the first of these questions, it will be seen from the relator's verified complaint, the substance of which we have heretofore given, that he has not attempted to show, in any manner, that the rule or regulation requiring that each of the pupils of the high school, as one of the exercises prescribed by the superintendent, with the sanction of the trustees, for the pupils of such school, should, at stated intervals, employ a certain period of time in the study and practice of music, and, for that purpose, should provide himself with a prescribed book, was not a reasonable and valid exercise of the discretionary power conferred by law upon such trustees and superintendent. It can not be doubted, we think, that the Legislature has given the trustees of the public school corporations the discretionary power to direct, from time to time, what branches of learning, in addition to those specified in the statute, shall be taught in the public schools of their respective corporations. Where such trustees may have established a system of graded schools, or such modifications of them as may be practicable, within their respective corporations, they are clothed by law with the discretionary power to prescribe the course of instruction, in the different grades of their public schools. We are of opinion that the rule or regulation, of which the relator complains in the case under consideration, was within the discretionary power conferred by law upon the governing authorities of the school city of Laporte, that it was not an unreasonable rule, but that it was such an one as each pupil of the high school, in the absence of sufficient excuse, might lawfully be required to obey and comply with.

It will be observed that the relator has stated the require-

ments of the rule, whereof he complains, with much vague-
ness and uncertainty.   " Each of the pupils shall, at stated
intervals," etc.  What the intervals are, whether once a week,
once a month, or once each term or session, is wholly left to ·
conjecture.   " Employ a certain period of time," etc.  There
is no period of time more uncertain in duration, than the
time represented by the expression, " a certain period of time."
Was it fifteen minutes, one hour, or one day ?  The relator
has not informed us.

We pass to the consideration of the second question,
above stated.

2.  The school authorities of the city of Laporte, in the
exércise of the discretionary power conferred on them by
law, adopted a rule or regulation requiring that each pupil of
their high school should, at stated intervals, employ a certain
period of time in the study and practice of music and, for
that purpose, should provide himself with a prescribed book.
The relator requested the superintendent of the public schools
of the city of Laporte to excuse his son, Abram Andrew,
who was one of the pupils of the high school, from the study
and practice of music at the musical exercises of such school,
and directed his son not to participate in such musical exer-
cises.   The superintendent afterwards required the relator's
son, as one of the pupils of the high school, to take part in
the musical exercises of the school, and, upon his refusal to
obey or comply with such requirement, suspended him from
such high school.   The only cause or reason assigned by the
relator for requiring his son to disobey such rule or regula-
tion was, that he did not believe it was for the best interest
of his son to participate in the musical studies and exercises
of the high school, and did not wish him to do so.   The re-
lator has assigned no cause or reason, and it may be fairly
assumed that he had none, in support either of his belief or
of his wish.   The important question arises, which should
govern the public high school of the city of Laporte, as to
the branches of learning to be taught and the course of in-

struction therein, the school trustees of such city, to whom the law has confided the direction of these matters, or the mere arbitrary will of the relator, without cause or reason in its support? We are of opinion that only one answer can or ought to be given to this question; the arbitrary wishes of the relator, in the premises, must yield and be subordinated to the governing authorities of the school city of Laporte, and their reasonable rules and regulations for the government of the pupils of its high school. This is the doctrine of the cases decided by the courts of last resort in many of our sister States; and, as applicable to the facts of this case, we think it is the better doctrine. *Roberts* v. *Boston,* 5 Cush. 198; *Hodgkins* v. *Rockport,* 105 Mass. 475; *Ferriter* v. *Tyler,* 48 Vt. 444 (21 Am. R. 133); *Sewell* v. *Board, etc.,* 29 Ohio St. 89; *Donahoe* v. *Richards,* 38 Maine, 379; *Gurnsey* v. *Pitkin,* 32 Vt. 224; *Kidder* v. *Chellis,* 59 N. H. 473.

On the other hand, it is not to be denied that the decisions of the Supreme Courts of Illinois and Wisconsin are in apparent conflict, to some extent at least, with what we here decide. *Morrow* v. *Wood,* 35 Wis. 59 (17 Am. R. 471); *Rulison* v. *Post,* 79 Ill. 567; *Trustees, etc.,* v. *People,* 87 Ill. 303 (29 Am. R. 55). There is much in the opinions of those learned courts, which, applied to the cases before them, meets our approval; but we think that the doctrine of those cases can not apply, and ought not to be applied, to the case in hand as stated by the relator, in his verified complaint herein, to which case we limit this opinion.

For the reasons given, our conclusion is that no error was committed by the court below in sustaining appellees' demurrer to the relator's complaint.

The judgment is affirmed, with costs.

Filed Oct. 16, 1886.