STATE, EX REL. T. J. SHEIBLEY, V. SCHOOL DISTRICT
No. 1, DIXON COUNTY, ET AL.

[FILED MARCH 17, 1891.]

**Schools:** SELECTION OF STUDIES: PARENTS MAY CONTROL. The
school trustees of a high school have authority to classify and
grade the scholars in the district and cause them to be taught in
such departments as they may deem expedient; they may also
prescribe the courses of study and text books for the use of the
school, and such reasonable rules and regulations as they may
think needful. They may also require prompt attendance, re-
spectful deportment and diligence in study. The parent, how-
ever, has a right to make a reasonable selection from the pre-
scribed studies for his child to pursue, and this selection must be
respected by the trustees, as the right of the parent in that re-
gard is superior to that of the trustees and the teachers.

ORIGINAL application for *mandamus*.

*J. I. McCarthy*, and *Davis, Gantt, & Keatley*, for re-
lator, cited: *State v. Weatherby*, 17 Neb., 554; *Stough v.
Sch. Dist.*, 4 Id., 361; *State v. Sch. Dist.*, 10 Id., 551; *Mor-
row v. Wood*, 35 Wis., 59; *Trustees v. Van Allen*, 87 Ill.,
303; *Rulison v. Post*, 79 Id., 567; *Murphy v. Board of
Directors*, 30 Ia., 429; *Perkins v. Board of Directors*, 56
Id., 476; *State v. Mizner*, 50 Id., 145.

*Barnes & Eames, contra*, cited: *Sewell v. Board of Edu-
cation*, 29 O. St., 91; *Board of Education v. Minor*, 23 Id.,
211; *Stewart v. Southard*, 17 O., 402; *Donahue v. Richards*,
38 Me., 378; *Hodgkins v. Rockport*, 105 Mass., 475;
*Downer v. Lent*, 6 Cal., 94; *Hines v. Lockport*, 50 N. Y.,
236; *Mills v. Brooklyn*, 32 Id., 489; *In re Church St.*, 49
Barb. [N. Y.], 455; *Jordan v. Hanson*, 49 N. H., 199;
*Gregory v. Burke*, 37 Conn., 365; *Wilson v. Mayor*, 1 Den.
[N. Y.], 599; *Kendall v. Stokes*, 3 How. [U. S.], 87; *Ram-
sey v. Riley*, 13 O., 157; *Draper v. Noteware*, 7 Cal., 276;

*Steele v. Dunham*, 26 Wis., 393 ; *Shipley v. Bank*, 10 Johns.
[N. Y.], 484; *People v. Stevens*, 5 Hill [N. Y.], 616; *People v. Judge*, 21 Wend. [N. Y.], 20; *People v. Supervisors*,
11 N. Y., 563; *People v. Judges*, 1 Doug. [Mich.], 319;
*St. Luke's Ch. v. Slack*, 7 Cush. [Mass.], 226 ; *James v.
Com.*, 13 Pa. St., 72; *Trustees v. Van Allen*, 87 Ill., 303 ;
*State v. Webber*, 108 Ind., 31; *State v. Mizner*, 50 Ia., 145.

MAXWELL, J.

An alternative writ of *mandamus* was granted in this
case to require the board of trustees of said school to re-
store one Annie Sheibley as a pupil in said school or show
cause why they failed to do so.   The defendants have filed
an answer in which they allege, first, in substance, that the
district was legally organized, and hence that the action of
the board is legal.

The question of the organization of the district is at-
tempted to be raised in the alternative writ.   It is apparent,
however, that it is a *de facto* corporation, and we will not
in this proceeding determine whether all the steps taken to
perfect the organization are such as are required by law or
not.   The question of the organization, therefore, of the
district will not be considered.

The trustees, as a defense of their action in expelling
Annie Sheibley, allege as follows :

" Admit that said relator made a demand on the respond-
ents herein, that his daughter, Annie Sheibley, be excused
from the study of grammar in said school, but aver the
facts to be that said demand was not made on said respond-
ents until said pupil had refused to prepare and recite her
lesson in said study in said school; that on the 30th day
of December, 1890, at the time the course of study was
changed from rhetoric, as alleged in said writ, and grammar
was substituted therefor, said change was made at the spe-
cial instance and request of the relator herein, and was so

changed to avoid trouble and difficulty with said relator, as he had expressed a desire to have his daughter study grammar instead of rhetoric; that on the 14th day of January, 1891, said pupil failed to prepare her lesson in grammar, and upon being asked to recite her lesson in said study refused so to do; and in refusing so to do she was insolent, and informed the principal that she did not have to study grammar, that her father had told her she could drop said study, whereupon said pupil was excused from said lesson for that day and was informed that she would be required to bring an excuse from the school board on the following day, which she failed to do; and at that time, upon her still refusing to prepare her lesson in said study, and on account of her insolent manner, she was suspended from said school; and the respondents herein, the school board, were informed of such suspension; that upon being informed of such suspension as aforesaid, said school board, the respondents herein, proceeded to investigate the cause of such suspension, and the relator appeared before them with his counsel and demanded that his daughter be excused as aforesaid, and when asked what reason he had for not wanting his daughter to pursue said study in said school, he informed the board 'that said study was not taught in said school as he had been instructed when he went to school,' and that was the only reason he would offer or give for not wanting his daughter to pursue said study; that said request was not made by said relator with a view of directing the study of his minor child, but that the same was made for the purpose of causing trouble and for the creating a spirit of insubordination in said school."

A copy of the regulations of the trustees in regard to the studies to be pursued in the school is set out in the record, and also a copy of the order of expulsion, from which it appears that the sole cause for which Anna Sheibley was expelled from the school was her refusal to study grammar. An attempt has been made to show that she has

been guilty of insubordination, but the charge, even if true, relates to her conduct during a former term of the school. We need not determine, therefore, whether the testimony sustains that charge or not. The uniform testimony of the scholars is, that during the present term of school, Anna Sheibley has conducted herself in a respectful and proper manner, and the only insubordination complained of is her refusal to pursue the study of grammar, which study her father had requested the trustees as well as the teacher that she should not be compelled to pursue. Sec. 3, subdivision 6, chap. 79, Compiled Statutes, provides that "Said trustees shall have power to classify and grade the scholars in such district, and cause them to be taught in such schools and departments as they may deem expedient; to establish in such district a high school when ordered by a vote of the district at any annual meeting, and to determine the qualifications for admissions to such schools, and the price to be paid for tuition on any branch therein; to employ all teachers necessary for the several schools of said district, to prescribe courses of study and text books for the use of said schools, and to make such rules and regulations as they may think needful for the government of the schools, and for the preservation of the property of the district, and also to determine the rates of tuition to be paid by non-resident pupils attending any school in said district."

Under the power here given, the trustees may require the classification of the pupils with regard to the branches of study they are respectively pursuing, and with a respect to proficiency in the same branches. They may also require prompt attendance, respectful deportment, and diligence in study. Such regulations are for the benefit of all and tend to promote a common interest and the efficiency of the school. Neither has a parent any right to require that the interests of other children shall be sacrificed for the interest of his children. Therefore he cannot insist that his child or children shall be placed in a particular

class, when by so doing other pupils will be retarded in the advancement they would otherwise make; neither can he require that his children be taught branches different from those in the prescribed course of the school, or be allowed to use text books different from those required by the trustees, nor will he be allowed to adopt methods of study for his children which interfere with methods adopted by the trustees, because, in order to secure efficiency in the school, it is necessary that the different classes work in harmony and co-operate together.

A high school is designed for scholars who have passed through the primary grades and are supposed to be able to read, write, and spell correctly, and to be familiar with other branches which need not be noticed.

Many, if not most, of the high schools of this state are in fact preparatory schools for the university, and the course of study determined with a regard to that object.

The testimony tends to show that Anna Sheibley is about fifteen years of age; that she is pursuing studies outside of those taught in the school which occupy a portion of her time.

Now who is to determine what studies she shall pursue in school: a teacher who has a mere temporary interest in her welfare, or her father, who may reasonably be supposed to be desirous of pursuing such course as will best promote the happiness of his child?

The father certainly possesses superior opportunities of knowing the physical and mental capabilities of his child. It may be apparent that all the prescribed course of studies is more than the strength of the child can undergo; or he may be desirous, as is frequently the case, that his child while attending school, should also take lessons in music, painting, etc., from private teachers. This he has a right to do. The right of the parent, therefore, to determine what studies his child shall pursue, is paramount to that of the trustees or teacher.

Schools are provided by the public in which prescribed branches are taught, which are free to all within the district between certain ages. But no pupil attending the school can be compelled to study any prescribed branch against the protest of the parent that the child shall not study such branch, and any rule or regulation that requires the pupil to continue such studies is arbitrary and unreasonable. There is no good reason why the failure of one or more pupils to study one or more prescribed branches should result disastrously to the proper discipline, efficiency, and well-being of the school.

Such pupils are not idle, but merely devoting their attention to other branches; and so long as the failure of the students, thus excepted, to study all the branches of the prescribed course does not prejudice the equal rights of other students, there is no cause for complaint. (*Trustees v. Van Allen*, 87 Ill., 303; *Morrow v. Wood*, 35 Wis., 59; *Perkins v. Board of Directors*, 9 N. W. R., 356; *Fitzgerald v. Northcote*, 4 Fost. & Fin., 656; *Rulison v. Post*, 79 Ill., 567; *Guernsey v. Pitkin*, 32 Vt., 224.)

Various plans have been adopted by teachers to secure the close attention of pupils to their studies, not the least successful of which, aside from earnestness, is a kindly interest in and apparent desire to promote their welfare. Some, however, occasionally are obdurate and cannot be controlled, and both the teacher and the trustees, for the good of the school, must resort to severe measures.

The common schools of this state are provided for the free education of all persons residing therein between the ages of five and and twenty-one years. It is the policy of the law to encourage every person of school age to be a constant attendant at school, and no person should be deprived of this right, except for adequate cause. The right to expel a pupil for disorderly conduct, or other adequate cause, no doubt exists in a school board, but it should not be exercised until other means have been adopted and

failed, and only as a means of preserving good order in the school. It is apparent that the excuse of the defendants is insufficient, and that they were not justified in expelling Anna Sheibley from the schools.

A peremptory writ is therefore

AWARDED.

THE other judges concur.