Dorothea Ruff, an infant, by Wallace Ruff, her next friend, and Wallace Ruff in his own right, v. Jesse G. Fisher, Principal of Miami Edison High School and Margaret Weatherrup, Instructor in Latin in said High School.

155 So. 642.

Opinion Filed June 11, 1934.

*Ruff & Ready,* for Appellants;

*Peters & Kemp,* for Appellees.

BUFORD, J.—The history of this case has been stated in an opinion prepared by Mr. Justice ELLIS and his argument as presented in the opinion is persuasive but it is not convincing and we cannot agree that the conclusions reached therein are correct.

This suit was instituted by the filing of a bill for injunction. Motion was filed to dismiss the bill. The motion contained the following grounds:

"1. There is no equity in complainants' bill of complaint.

"2. There is a non-joinder of parties defendant in said bill in that the Superintendent of Public Instruction for Dade County and the Board of Public Instruction for said county are necessary parties thereto.

"3. It appears that the controversy which is the subject matter of the bill has not been submitted to the County Superintendent of Public Instruction or the Board of Public Instruction as contemplated by Section 581, Sub-section 8, of the Compiled General Laws of 1927.

"4. It affirmatively appears from the bill of complaint that the matters therein complained of involve the discretion of the authorities charged by law with the administration of the State Public School System and *and* that the discretion of such authorities is exclusive and not subject to the control of the courts.

"5. It does not appear from the allegations of the bill that the matters therein complained of are not subject to and controlled by a rule reasonable and necessary to the orderly functioning of the public schools and duly adopted and promulgated by the duly constituted school authorities."

The order dismissing the bill is in the following language:

"The above styled and entitled cause coming on before this court to be heard upon the bill of complaint and motion

for temporary injunction and the defendants' motion to dismiss, and argument of counsel for the respective parties having first been had, and it failing to appear unto the court that the plaintiffs have stated any remedy within the school system particularly as to the provisions of Section 581, sub-section 8, of the Compiled General Laws of Florida, it is, therefore,

"ORDERED, ADJUDGED and DECREED that said motion to dismiss be and the same is hereby granted with leave to the plaintiffs to amend their bill if they be so advised within 10 days, in default of which said cause shall stand dismissed..

"DONE AND ORDERED, in Chambers, at Miami, Florida, this 1st day of December, A. D. 1923."

The rule is very well settled as stated in Section 1311, High on Injunctions, 4th Edition:

"It is important to observe that courts of equity do not interfere by injunction for the purpose of controlling the action of public officers constituting inferior *quasi* judicial tribunals, such as boards of supervisors, commissioners of highways, and the like, on matters properly pertaining to their jurisdiction, nor will they review and correct errors in the proceedings of such officers, the proper remedy, if any, being at law, by writ of *certiorari.*"

It is also well settled that the writ of injunction is a discretionary writ.

It is our view that this suit was prematurely instituted. The appellant had not exhausted her statutory remedy. Section 454, R. G. S., 561, C. G. L., prescribes the duties of the board of public instruction, and, amongst other things, it provides by sub-section 3 as follows:

"To appoint one supervisor for each school on the recommendation of the patrons, whose duty it shall be to supervise the work of the school and to report to the county super-

intendent of public instruction monthly the result of his observations."

And it also provides in sub-section 10, as follows:

. . "To prescribe, in consultation with prominent teachers, a course of study for the schools of the county and grade them properly; and to require to be taught in every public school in the county over which they preside, elementary physiology, especially as it relates to the effects of alcoholic stimulants and narcotics, morally, mentally and physically; and all persons applying for certificates to teach shall be examined upon this branch of study, under the same conditions as other branches required by law."

The last quoted sub-section vests the county board of public instruction with power to prescribe a course of study for the schools of the county and requires that it shall provide a course in elementary physiology, etc.

Section 464 R. G. S., 581 C. G. L., prescribes the duties of a county superintendent. Sub-section 8 provides as follows:

"To decide upon questions and disputes which arise when submitted to him by the parties interested, and to refer his decisions to the board of public instruction."

Section 465, R. G. S., 584 C. G. L., defines the duties of the supervisors. Sub-section 1 provides:

"To supervise the work and management of the school and its interests over which he is appointed, and report monthly to the board of public instruction."

Now, after consideration of these statutes, we entertain the opinion that a school teacher is under the supervision of the principal and is bound to follow the instructions of the principal, unless a higher authority warrants such teacher in pursuing some other course. The principal is under the supervision of the school supervisor, who is, in turn, under

the direction and supervision of the superintendent of public instruction and who, in turn, is under the direction and supervision of the county board of public instruction.

So it is that when discord arises between a patron or pupil of the school and the teacher, the matter in due course should be taken to the principal for adjustment and, if satisfactory adjustments cannot be made, then it should be taken up with the school supervisor and if either party is not satisfied with the disposition then obtained, the issue should be presented to the county superintendent and, if he cannot satisfy the parties it should then be reported to the county board of public instruction and if by the action of the board the legal rights of any one are infringed upon or violated, then such aggrieved party has the remedy of appealing to the courts for judicial determination of the questions involved.

If order and decorium are to prevail in our public schools and constituted authority is to be respected, controversies between school teachers, principals or officers on the one side and pupils and patrons on the other side must be settled in an orderly manner and it would be entirely unreasonable to suppose that the doors of the courts of equity are thrown open for the purpose of supervising the conduct of school teachers and school principals and for the purpose of directing them by injunction how and in what manner their duties should be performed.

We think that the order of the chancellor constituted no abuse of his discretion and that it was justified under the facts as alleged in the pleadings, for which reason the same should be affirmed, and it is so ordered.

Affirmed.

WHITFIELD, TERRELL and BROWN, J. J., concur.

DAVIS, C. J., concurs specially.

ELLIS, J., dissents.

Davis, C. J. (specially concurring).—I agree to the conclusion reached by Mr. Justice Buford and also agree to the reasons stated by him for reaching such conclusion. I likewise concur with Mr. Justice Ellis in his excellent review and analysis of the general legal rights of parents with respect to their right to control the scope of education of their children where no positive rule of law is thereby violated.

Whitfield, J., concurs.

Ellis, J. (dissenting).—Dorothea Ruff is a girl of fifteen years of age and is a pupil in the Miami Edison High School, an accredited high school in the City of Miami. Dorothea had been a pupil in that school for four years, and had graduated from the junior high school department and had completed the first year of senior high school work and was in the second year of senior high school, or the eleventh grade. She had finished the first and second year in the study of Latin and successfully passed examinations in that study and desired to continue her studies in that language.

Upon matriculation in that school, however, for the second year high school work an instructress in that school declined to instruct her in third-year Latin but required Dorothea to take the course prescribed for four-year students in that study along with pupils who theretofore had completed the third year of the prescribed Latin course.

Dorothea was unqualified to enter that class. The effect of the ruling was to impose such a burden of study upon her as to impair her efficiency in other studies of the prescribed course, jeapordize her right to perfect herself in other studies prescribed for the eleventh grade, and insure her failure to pass examinations therein and retard her progress in the school. She was in no wise prepared for

the fourth-year Latin course and was unable with the time at her disposal to perform the work required in the eleventh grade or to assimilate the knowledge sought to be imparted to her in the fourth-year Latin course.

In this state of case her father, in her behalf, applied to the instructress and principal of the high school for permission to his daughter to abandon the fourth-year Latin course. The request was refused, so Dorothea and her father, Wallace Ruff, applied to the Circuit Court for Dade County for an injunction to restrain the instructress, Margaret Weatherrup and the principal, Jesse G. Fisher, from compelling Dorothea to pursue the course in Latin.

A motion to dismiss the bill was granted with leave to amend within ten days, the court's view being that no remedy had been stated within the school system particularly as to the provisions of Section 581, sub-section 8, of the Compiled General Laws of Florida, 1927.

That section prescribes the duties of the county superintendent and empowers him to decide upon questions and disputes between parties interested when submitted to him and to refer his decisions to the board of public instruction.

The motion to dismiss challenged the equity of the bill, sufficiency of parties defendant, asserting that the superintendent of public instruction and the county board of public instruction should have been joined as defendants, and that the matter set out in the bill involved the discretion of the authorities charged by law with the administration of the public school system. Mr. Ruff and his daughter appealed from the order.

The bill presents a case in which the parent of the child, a citizen of the State and patron of the public school, has been denied the right to select a course of study within the

requirements of the school for the period in which the child had entered for instruction; that the instructress had refused to permit the child to pursue a study prescribed for that period and imposed upon her a course in Latin not required to be taken for the particular period of study by the laws of the State. The effect of such requirement being to impose upon the student a work which if not impossible for her to perform would so seriously embarrass and handicap her in other studies as to jeopardize her efficiency in the prescribed courses, impair her chances for satisfactory assimilation of knowledge in those branches of learning to which she was entitled to full and adequate instruction, discourage her in her efforts to learn because of humiliation to her by reason of failure to pass her examinations, and in effect destroy, so far as the child's interests are involved, the purpose of the State in providing a system of public free schools.

There is no controversy on the point that a parent has the right to select for his child the particular courses of study within the required subjects which the law prescribes. No rule of morals or social usage gives to the teacher a superior right to that of the parent in that regard.

The asserted authority of the teacher and principal in the public school which the child attended and to which she had a right under the law to apply for instruction defeated the very purpose of the law by discouraging the child rather than encouraging her in the acquisition of knowledge which the State deems necessary to be given to its youth.

To have observed the wishes of the father and child in this particular would not have impaired the efficiency of the school, would not have interfered with instruction of other students in their chosen subjects, nor embarrassed and humiliated and discouraged the infant petitioner in her

effort to acquire the elements of knowledge and thereby fulfill the designs and purposes of the State.

The labors of school teachers are great and the responsibilities imposed upon them are burdensome. Their work is worthy of the highest consideration and every encouragement should be given them by way of adequate compensation and full co-operation by student, parent and people, but all that does not vest the teacher nor the principal of the school with a right superior to the common-law right of the parent to select for his offspring such courses of study within the prescribed limits of such studies as the law names as he deems best suited to his child's physical and mental capacities. The right to life, liberty and the pursuit of happiness embraces the right to acquire knowledge and pursue studies which the parent and his child deem best adapted to develop the young mind and equip the youth for the duties of citizenship so long as such choice is within the course of studies prescribed by law.

For the teacher to pursue a course contrary to such right and incur the hazard of impairing the youthful ambition to acquire knowledge is to exercise unreasonably the limited power possessed by him and to diminish the work undertaken by the State in providing a system of public free schools. See Morrow v. Wood, 35 Wis. 59, 17 Am. Rep. 471; Raulison v. Post, 79 Ill. 567; School Board Dist. No. 18, Garvin Co., v. Thompson, 24 Okla. 1, 103 Pac. Rep. 578, 24 L. R. A. (N. S.) 221, 19 Ann. Cas. 1188.

The State Superintendent of Public Instruction is empowered in collaboration with others to prepare a standard course of study for high school grades, prescribing minimum requirements as far as practicable to secure equality of mental power and training among those completing its instruction and to secure suitable preparation for entrance into

the lowest college classes of the State institutions for higher education. 680 C. G. L., 1920.

The State Board of Education is empowered to keep in view the establishment of schools on a broad and liberal basis, the object being to impart instruction to youth in the professions of teaching, the knowledge of the natural sciences, the theory and practice of agriculture, horticulture, mining, engineering and the mechanic arts, the ancient and modern languages, the higher range of mathematics, literature and in the "useful and ornamental branches not taught in common schools." Section 755, C. G. L., 1927.

Teachers in the public schools have the power to suspend pupils from school for ten days for gross immorality, misconduct or persistent violations of the regulations. In such cases the teacher is required to give notice to the parent or guardian of the pupil of its suspension. The teacher is also empowered to enforce needful restrictions upon the conduct of the pupils. Section 669, C. G. L., 1927.

The county board of public instruction is empowered in consultation with prominent teachers to prescribe a course of study for the schools of the county and grade them properly and "to require to be taught in every public school in the county over which they preside, elementary physiology, especially as it relates to the effects of alcoholic stimulants and narcotics, morally, mentally and physically." Sec. 561, C. G. L., 1927.

But those powers, ample as they are, do not destroy the common-law doctrine that the parent has the control over the education of the child. There is still left of the doctrine, founded as it is in the natural love and affection of parents for their children, which even imbecility, deformity, immorality, wickedness and even criminality do not wholly destroy, sufficient recognition of the parent's right to select

for his child such course of studies as he deems best suited to the mental and physical and temperamental condition of the child so long as in such selection he does not interfere with the instruction of other children in the school and does not disorganize or impair the orderly routine and schedules prepared and adopted for daily instruction in the particular school within the powers granted to the teacher by law.

If teachers in our public schools have the power to impose special requirements upon pupils whom they may designate, which exact of such pupils so much of mental labor and physical inconvenience and discomfort as to impair their ability to receive and mentally absorb the information which the school system designs for the youth of the State, then such power is tantamount to the power of dismissal from the school of such children upon the caprice of the particular teacher who for some unsound and untried theory or personal prejudice imposes such unreasonable requirements.

There is some conflict as to the power to suspend or expel students for failure to participate in certain required studies if the parent of the child requests that it be excused, but the principle is generally recognized that the parent is as much interested in the public school system and the perpetuation of its purposes, the efficient and orderly management by county officials and school teachers and the economic and honest administration of school funds by them as the school officials themselves, that a parent is just as patriotic and as deeply imbued with the principles of civic virtue and love of country and of offspring as school officials. And it will not be presumed that a parent would arbitrarily and without cause or reason insist on dictating a course of study for his child in opposition to the course prescribed by the school authorities within their power as defined by law. State, *ex rel.* Sheibley v. School-Dist. No. 1, 31 Neb. 552,

48 N. W. Rep. 393; Trustees v. People, 87 Ill. 303, 29 Am. Rep. 55; Guernsey v. Pitkin, 32 Vt. 224, 76 Am. Dec. 171; Sewell v. Defiance Union School Board, 29 Ohio St. 89.

Some of the above cited cases upheld the dismissal of the child, but the parents' interference was not shown.

We are mindful of the danger to the public schools of the State which a recognition of a parent's power over his child in the matter of choosing for it such studies in the public schools as he deems proper would threaten, especially when the parent undertakes to exercise such power in opposition to the established order and course of studies authorized by law to be prescribed, and we do not mean to imply in the slightest degree that the parent has or may exercise such power which would be a power to disorganize the school and destroy its usefulness.

We are, however, persuaded to the conviction that neither the principal by his general or special directions, nor the teacher who serves under him officially, may arbitrarily and unreasonably impose upon a pupil in opposition to its parent's will the duty of pursuing a particular study not prescribed for the particular class, period or semester, in which the pupil is placed by her qualifications and not required by law to be taught as a compulsory subject; that to recognize such power and uphold its capricious exercise to the point where the pupil would be embarrassed, humiliated in spirit and discouraged from pursuing her studies by the unreasonable burden placed upon her, would deprive the child of her constitutional guaranty of the right to pursue happiness.

In the view in which the educational system of this State was framed, and the people seemingly have, education, or instruction in the elements of knowledge and the right to pursue information acquired in the arts and sciences is an

inalienable right to the pursuit of happiness of which a child may not be deprived by the unreasonable exercise of power by her instructress in the public school.

The court erred in granting the motion to dismiss the bill.

The order is reversed with leave of the defendants to answer. The motion to dismiss the appeal is denied.